# IN THE COURT OF APPEALS OF TENNESSEE AT KNOXVILLE
November 14, 2017 Session

## JANA LEA PURVIS v. DENNIS PATRICK PURVIS, II

**Appeal from the Circuit Court for Bradley County**
**No. V-15-514     Lawrence H. Puckett, Judge**

_____

### No. E2016-02167-COA-R3-CV

_____

In this divorce case, Dennis Patrick Purvis, II (Father) appeals the trial court's judgment allowing Jana Lea Purvis (Mother), the primary custodial parent, to relocate to California with the parties' two children. The trial court found that Father had physically abused Mother and emotionally abused her and the children. Mother appeals, challenging, among other things, the trial court's order expanding Father's parenting time. She argues that he should be limited to the co-parenting time set forth in her proposed parenting plan. She states that his time should be so limited as mandated by Tenn. Code Ann. § 36-6-406(a)(2) (2017). We find that the evidence does not preponderate against the trial court's findings of abuse. Accordingly, we affirm the trial court's decision allowing Mother to move to California. We modify the parenting plan to vacate the trial court's decision allowing Father visitation in California for one weekend a month in seven months. We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated in Part and Affirmed in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Jerry Hoffer, Cleveland, Tennessee, for the appellant, Dennis Patrick Purvis, II.

Philip M. Jacobs, Cleveland, Tennessee, for the appellee, Jana Lea Purvis.

1

# I.

The parties were married on August 3, 2002. Two daughters, ages nine and five at time of trial, were born to the marriage. Mother filed for divorce on July 13, 2015. She alleged that it was in the best interest of the children for her to be named primary residential parent. She requested the court to allow her to move to Chico, California, where she grew up and has family support. Mother sought approval of her proposed parenting plan and an award of spousal support. A five-day trial took place in late 2015. Twenty-seven witnesses testified. At the end, the trial court orally delivered a memorandum opinion that was incorporated into its final judgment.

The trial court considered each of the fifteen factors set forth in Tenn. Code Ann. § 36-6-106(a) (2017), making extensive and specific findings of fact pertinent to each applicable factor, in determining the best interest of the children. The court found that most factors weighed in favor of Mother, and some weighed equally in both parents' favor. Mother, and some of her other witnesses, testified that Father had emotionally and verbally abused her and the children. She further alleged that Father threw a TV remote control at her in a rage, hitting her in the face, which caused bruising and a black eye. The trial court credited her testimony and discredited Father's testimony. Mother was designated primary residential parent and given permission to move to California, a move the trial court found to be in the best interest of the children.

At the end of the trial, the court stated it was adopting Mother's proposed parenting plan. Father filed a post-trial motion requesting the trial court to increase his parenting time. On March 8, 2016, a hearing apparently took place on that motion. No transcript of the hearing is in the record. In its final judgment, the trial court adopted Mother's proposed parenting plan but modified it to give Father additional parenting time, including the entire summer vacation instead of roughly half, and every spring break instead of alternating spring breaks between the parties. The trial court declined to award Mother spousal support. Father timely filed a notice of appeal.

# II.

Father raises the issue of whether the trial court erred in allowing Mother to relocate to California with the children. Mother raises these issues:

> Whether the trial court erred in expanding Father's parenting time from her proposed parenting plan, rather than limiting it after a finding of abuse as required by Tenn. Code Ann. § 36-6-406(a)(2).

2

Whether the trial court erred in declining to order Father to pay spousal support.

Whether Father's appeal is frivolous.[1]

### III.

### A.

A trial court's decision regarding a parenting schedule is subject to review under the deferential abuse of discretion standard. *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017). As the Supreme Court observed in *C.W.H.*,

> This Court has previously emphasized the *limited* scope of review to be employed by an appellate court in reviewing a trial court's factual determinations in matters involving child custody and parenting plan developments. *Armbrister* [*v. Armbrister*], 414 S.W.3d [685], 692-93 [(Tenn. 2013]. . . . Indeed, trial courts are in a better position to observe the witnesses and assess their credibility; therefore, trial courts enjoy broad discretion in formulating parenting plans. *Id.* at 693 (citing *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007)). "Thus, determining the details of parenting plans is 'peculiarly within the broad discretion of the trial judge.'" *Id.* (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)). Appellate courts should not overturn a trial court's decision merely because reasonable minds could reach a different conclusion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

*Id.* (emphasis in original).

The parties agree that because the trial court made an *initial* custody determination in this divorce action, the parental relocation statute does not apply in this case. Tenn. Code Ann. § 36-6-108 (stating that the statute applies "[a]*fter* custody or co-parenting has

---

[1] Mother also includes this issue in her brief: "whether the trial court erred and abused its discretion by requiring the Mother to be responsible for travel expenses associated with the Father's co-parenting time." In their briefs, both parties state that the trial court issued such an order. But it is nowhere to be found in the record before us. "It is well-settled that a trial court speaks through its written orders." *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015). There is no indication in the record that Mother was, or should be, required to pay Father's travel expenses.

been established by the entry of a permanent parenting plan or final order" (emphasis added)); *see **Pandey v. Shrivastava***, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *3 n.3 (Tenn. Ct. App., filed Feb. 22, 2013) (parental relocation statute "has been held inapplicable in cases where the trial court is making an initial custody decision or parenting arrangement"), and cases cited therein. "Instead, a best interest analysis applies, and the court should consider the proposed relocation of the parent when making its best interest analysis." ***Id.***

The governing statute, Tenn. Code Ann. § 36-6-106, provides as follows, in pertinent part:

> (a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:
>
> (1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
>
> (2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. . . . ;
>
> (3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

4

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . . ;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

The trial court found that Mother was the primary caregiver of the children during the marriage, "operat[ing] in that role and tak[ing] a greater responsibility for performing parenting responsibilities." The court, expressly finding Mother to be an "exemplary, outstanding person," stated the following:

> I think protecting the child[ren's] intellectual and moral development is something that certainly I would think – at this point I think the father's deficient in and the mother's superior in.

Mother testified at length about Father's abuse – the one incident of physical abuse, and emotional and verbal abuse, including Father's attempt to isolate her from her family and friends in the community. Father denied her allegations. Regarding the trial court's assessments of the parties' credibility, it found as follows:

> I have absolutely no reason not to believe the mother. And I do believe her and I credit her on the material matters in this case against any conflicting testimony by the father or by his sister or by his niece.
>
> * * *
>
> Again, there is lots in this record that goes against the credibility of the father in this case. Just a lot of things. Even from his own witnesses that were supposed to be here to support him.
>
> * * *
>
> I credit what [Mother] says about Mr. Purvis's lack of truthfulness. Many times he's lied in her presence.

Among the reasons for finding the move to California to be in the children's best interest, the trial court found that Mother had a family support system there, and that her relationships with church and community members in Cleveland had been undermined by Father, leaving her with little support. In this vein, the court found:

6

The problem I see in this case is the father's treatment of the mother with other people, third parties, convincing them that – either that she was on drugs or she had an affair or something like that and then these children being in those environments. To me that's a very significant concern for the welfare of these children.

*     *     *

Two positions that we've got here is that basically the mother has been isolated from her relationships at Lee [University] and also at the church because people have taken sides. That's just obvious[] in this proof.

*     *     *

And here's a real problem. Because of the reaction of the father here, there – she lost all of her support system. Even her counselor at the beginning, Ms. Lemmert. She just doesn't have it here and I think that she needs it because of my finding that she's been a victim of domestic – emotional abuse and domestic violence in this incident.

*     *     *

So I do believe that she really believes, as she said, that California is best for the children because she has an extended family there. There's a loving community there for her and the children. And so let me add to that. Her move to California would be for good reason in light of the domestic violence too so she can obtain an adequate support group for her as the victim of domestic violence. And it's best for her children also because of the [e]ffect of the domestic abuse on them.

And, of course, the family connections. Really they don't have any connections. The father's family is just his sister and his niece here in Tennessee and the rest of his family is in Ohio. So the real family connections are more available elsewhere.

The evidence does not preponderate against these findings of the trial court.

At the end of trial, the court stated that it was adopting Mother's proposed parenting plan, which provided Father 80 days of parenting time. Specifically, the parenting plan allowed Father one weekend every month in September, October, November, January, February, April, and May; every fall break; alternating Thanksgiving and spring breaks; approximately ten days of the Christmas or winter break; and roughly half, or four weeks, of the children's summer vacation. In its final judgment, the trial court provided as follows:

> the Court adopts Exhibit 15, Mother's proposed Permanent Parenting Plan. . . . After argument on March 8, 2016, the parenting plan is modified to show that Father would have the following co-parenting times in addition to what is already stated in the plan to insure the minimum of eighty (80) days per year:
>
> a) Every Spring Break – 7 days
>
> b) Every Fall/Thanksgiving Break – 7 days
>
> c) Christmas Break – 8-10 days
>
> d) Summer – 8 weeks (56 days); Father's time shall be continuous 8 weeks.

On appeal, Mother argues that the trial court erred in expanding Father's parenting time after making its findings of domestic abuse. Mother relies on Tenn. Code Ann. § 36-6-406(a), which provides, in pertinent part:

> a parent's residential time as provided in the permanent parenting plan or temporary parenting plan *shall be limited* if it is determined by the court, based upon a prior order or other reliable evidence, that a parent has engaged in any of the following conduct:

*    *    *

(2) Physical or sexual abuse or a pattern of emotional abuse
of the parent, child or of another person living with that child
as defined in § 36-3-601.[2]

(Emphasis added.) This Court has interpreted section 406 to be mandatory on several occasions. ***Carr v. Carr***, No. M2017-00556-COA-R3-CV, 2018 WL 1137109, at *6 (Tenn. Ct. App., filed Mar. 1, 2018) ("section 36-6-406(a)(2) embodies a statutory mandate"); ***Jacobsen v. Jacobsen***, No. M2012-01845-COA-R3-CV, 2013 WL 1400618, at *1, *6 (Tenn. Ct. App., filed Apr. 5, 2013) (section 406(a) "mandates that a parent's parenting time shall be limited if the parent is found to have engaged in abuse"); ***Beyer v. Beyer***, 428 S.W.3d 59, 71 (Tenn. Ct. App. 2013); ***In re Emma E.***, No. M2008-02212-COA-R3-JV, 2010 WL 565630, at *7 (Tenn. Ct. App., filed Feb. 17, 2010) ("[i]f the court determined that Father physically, sexually, or emotionally abused Mother, it would have been bound to limit Father's parenting time to some degree"); ***Burden v. Burden***, 250 S.W.3d 899, 913 (Tenn. Ct. App. 2007). The Supreme Court has likewise indicated that a finding of abuse under section 406(a) "*necessitates* limiting the parent's residential time with the child." ***Armbrister v. Armbrister***, 414 S.W.3d 685, 696 (Tenn. 2013) (emphasis added).

With this principle in mind, we examine the trial court's factual findings of abuse. The court found as follows in pertinent part:

> I credit [Mother's] testimony that [Father] snapped in a rage and picked up the remote control and threw it at her face and she went to the bedroom. That he wasn't holding the remote to begin with, he picked it up.
>
> *        *        *
>
> I've granted her a divorce because I credited that she didn't feel safe. He's not a good example for her children. There's no signs of change. She could not any longer accept his treatment of her. That he attempted to intimidate her. Yelling, breaking things and punching things. A lamp on the lamp stand. Punched a hole in the wall I think or door. He doesn't like to be questioned or disagreed with, which I think is sustained by the record.

---

[2] Tenn. Code Ann. § 36-6-601 defines "abuse," in pertinent part, as "inflicting, or attempting to inflict, physical injury on an adult or minor by other than accidental means, placing an adult or minor in fear of physical harm, physical restraint, malicious damage to the personal property of the abused party."

9

\*     \*     \*

[Father] called her things like stupid, idiot and you don't know about money and the "B" word and that she never called him names or tried to hurt his feelings.  I credit that.

\*     \*     \*

Not only did he say his family didn't want to – didn't love her but they didn't want to help her.  And I credit that she's observed the children many times scared of him.  And then his comment, "well, good.  They should be scared of me."  I credit that.

\*     \*     \*

I believe there's emotional abuse here on top of domestic violence.  I think there's emotional abuse by the father here.  You don't go around putting holes in the walls and throwing pictures of family members when you're mad and breaking things and then throwing things at your wife when you get angry.  You just don't do those things.  And then the way he interacted with his child.  . . .  I think the father's treatment of the mother and his conduct is operative in this difficulty for this child so there is some evidence of physical and emotional abuse to the other parent and even to these children.

\*     \*     \*

Children who are emotionally abused or even physically abused still can love their parent.  This is not a new or unusual phenomenon.  But the question is what's in the best interest of these children and between these two parents.

She does question his emotional fitness and I believe she has grounds for doing that based on her observation and he needs to get physically fit so he can do things with them. But I credit her testimony about the emotional abuse . . . The [elder daughter] is having some physical manifestations of some emotional turmoil so I believe that the father's conduct is affecting this child.

As can be seen, the trial court's findings regarding Father's abuse are detailed, extensive, and unambiguous. Based on our review of the over 1,400 pages of testimony in the transcript, we find the evidence does not preponderate against those findings. Under the circumstances of this case, we believe Tenn. Code Ann. § 36-6-406(a)(2) mandates that Father's parenting time be limited. Accordingly, we vacate the trial court's judgment so as to delete Father's co-parenting time of one weekend per month in September, October, November, January, February, April, and May. Given Father's financial situation and the distance involved, we doubt that this change will, as a practical matter, have any real effect. With this modification, we hold that the trial court did not abuse its discretion in its judgment regarding the co-parenting time allotted to each party.

**B.**

Mother argues that the trial court erred in declining to award her spousal support. Our standard of review of the trial court's spousal support decision is as stated by the Supreme Court:

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award.
>
> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of

discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011); ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but " 'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.' " ***Henderson***, 318 S.W.3d at 335 (quoting ***Lee Medical, Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 105-06 (Tenn. 2011) (internal citations and footnote omitted).

A trial court's award of spousal support is governed by Tenn. Code Ann. § 36–5–121(i) (2017), which provides:

In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further

12

education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36–4–121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The parties' marriage lasted around thirteen years. Father's monthly gross income was established at $5,250 for child support calculation purposes. Mother worked as a schoolteacher for the early part of the marriage, then stayed at home with the children. She has a master's degree in teaching and is licensed to teach Spanish in Tennessee. At

13

the time of trial, she expected soon to get her license to teach English as well. Mother testified that she accepted a job offer to teach at Bradley High School before trial, in the event that she was required to stay in Tennessee. The salary was $42,500, which is the amount of income imputed to her by the trial court to calculate child support. Father's child support payment was set at $549 per month. Mother testified that she "had no doubt" she would be able to get a teaching job in California. Her father had also offered her a job in California.

Mother's affidavit of income and expenses estimates her total expenses in California to be $3,875 per month. The trial court, recognizing Mother's excellent employment history, hard work, and marketable skills, opined that "she will not have any problems getting a job in California." Father was awarded the marital residence and ordered to pay Mother one-half the equity in the house, an amount of $20,185.50. Considering Mother's earning capacity and the $549 per month child support, we cannot say that the trial court abused its discretion in declining to award her spousal support.

Finally, Mother argues that Father's appeal is frivolous. Considering only the issue Father raised, the question of whether his appeal is frivolous is arguably a close one. Exercising our discretion, we do not hold this appeal to be frivolous.

## IV.

The judgment of the trial court is affirmed as modified. Costs on appeal are assessed to the appellant, Dennis Patrick Purvis, II. The case is remanded to the trial court with instructions to adjust the parenting plan proposed by Mother as provided in this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE

14